IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 7 2007

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

| | |
|---|---|
| JOSE MANUEL ZALDIVAR-FUENTES, ) | |
|     Petitioner, ) | Civil Action No. 7:06cv00465 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Samuel G. Wilson |
|     Respondent. ) | United States District Judge |

Petitioner, Jose Manuel Zaldivar-Fuentes, filed this 28 U.S.C. § 2255 motion challenging the validity of his plea and his sentence of 120 months incarceration followed by a term of five years supervised release, for distribution of five hundred grams of more of methamphetamine in violation of 21 U.S.C. § 841(a)(1).[1] Zaldivar-Fuentes maintains that his guilty plea was not knowing and voluntarily, that the government breached his plea agreement, and that counsel provided ineffective assistance. This matter is before the court on respondent's motion to dismiss. The court finds that Zaldivar-Fuentes knowingly and voluntarily entered his plea, that the government did not breach the plea agreement, and that he was not prejudiced by his counsel's allegedly deficient performance. Accordingly, the court grants respondent's motion to dismiss.

I.

On February 9, 2005, a grand jury returned an indictment against Zaldivar-Fuentes for conspiring to distribute five hundred grams or more of methamphetamine in violation of 21 U.S.C. § 846. Thereafter, on May 26, 2005, Zaldivar-Fuentes was named in a one-count information, charging him with distribution of five hundred grams or more, in violation of 21 U.S.C. §§ 841(a)(1). Pursuant to a written plea agreement, Zaldivar-Fuentes pled guilty the one-count information. In accordance with

---

[1] In his reply brief, Zaldivar-Fuentes names the undersigned as a person who has "an interest in the outcome of this case." However, he neither moves for recusal nor explains his allegation. Accordingly, the court does not find that passing allegation in Zaldivar-Fuentes' reply brief to be a sufficient affidavit under 28 U.S.C. § 144.

1

the plea agreement, the court dismissed the February 9, 2005 indictment pending against him. Zaldivar-Fuentes' plea agreement contained a waiver of the right to appeal any sentencing guideline issues and a waiver of the right to collaterally attack the judgment and any part of the sentence imposed by the court.

During the plea colloquy, Zaldivar-Fuentes, among other things, stated under oath that he had received a copy of the information, that he had discussed the charges and his case with counsel, that he was fully satisfied with his counsel's representation, that he had the entire plea agreement read to him before he signed it, that he understood everything in the plea agreement, that no one had made any offer or different promise or assurance to him to induce entry of the plea, that no one had forced him to enter the guilty plea, that he understood the maximum penalties for the offenses charged, that he was waiving his right to appeal and to collaterally attack his sentence, and that his plea was knowing and voluntary. After hearing a summary of the government's evidence against him, Zaldivar-Fuentes stated that he did not disagree with any of the evidence presented. The court ultimately sentenced Zaldivar-Fuentes to 120 months incarceration, the mandatory minimum, followed by a five-year term of supervised release.

## II.

Zaldivar-Fuentes challenges the validity of his plea, claiming it was not voluntary and knowing, based on his allegations that he is "of Latin des[c]ent and do[es]n't totally understand English" and that "[t]here were plea negotiations between the prosecutor and [] counsel which were not fully disclosed and explained to [him]."

### A.

A petitioner may not raise for the first time in this § 2255 petition a claim which he could have raised but did not raise on direct appeal unless the petitioner establishes cause and prejudice capable of excusing default. Bousley v. United States, 523 U.S. 614 (1998). Zaldivar-Fuentes did not raise this

2

claim that his ability to understand English may have affected the validity of his plea, and he has not shown cause and prejudice to excuse his default, therefore the court dismisses this claim.[2]

## B.

Zaldivar-Fuentes' claim that counsel failed to disclose and explain the plea negotiations to him contrasts sharply with the statements he made during his plea colloquy, when he affirmed that he had discussed the charges and his case with counsel, that he was fully satisfied with his counsel's representation, that he had read the entire plea agreement or had it read to him before he signed it, that he understood everything in the plea agreement, and that he understood the maximum penalties for the offenses charged.[3] The court took care to ensure that Zaldivar-Fuentes was entering his plea both knowingly and voluntarily by reviewing each provision until the court was fully satisfied that Zaldivar-Fuentes understood. The court made a finding on the record at the plea hearing that Zaldivar-Fuentes voluntarily and knowingly entered into the plea. This finding was not a mere formality but rather reflected the court's considered opinion that his plea was in fact knowing and voluntary. Nothing that has followed has dispelled that conclusion.

The court finds that Zaldivar-Fuentes knowingly and voluntarily waived his right to appeal sentencing guideline issues and to collaterally attack his plea and sentence. A waiver of the right to collaterally attack a conviction or sentence is valid so long as it is voluntarily and knowingly made. Lemaster, 403 F.3d at 220-23. Whether the waiver is voluntary and knowing depends "upon the

---

[2] Further, Zaldivar-Fuentes did not raise this issue at any point throughout his plea or sentencing hearings and moreover, he participated in both hearings by speaking English.

[3] "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackedge v. Allison, 431 U.S. 63, 74 (1977); and citing United States v. Bowman, 348F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

3

particular facts and circumstances surrounding [its making], including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). A defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid. See United States v. Brown, 232 F.3d 399, 405-06. Thus, so long as Zaldivar-Fuentes' plea agreement and the accompanying waiver of collateral attack were knowing and voluntary, Zaldivar-Fuentes may not raise his claims in a § 2255 motion. Accordingly, the knowing and voluntary waiver bars any claims of ineffective assistance of counsel that Zaldivar-Fuentes had related to counsel's performance before the close of the plea hearing.

## III.

Zaldivar-Fuentes alleges that the court imposed an "unreasonable sentence." Although Zaldivar-Fuentes knowingly and voluntarily waived his right to appeal sentencing guideline issues and to collaterally attack his plea and sentence, claims that allege that the sentence was "imposed in excess of the maximum penalty provided by statute" or that the defendant was "wholly deprived of counsel during his sentencing proceedings" survive a collateral attack waiver. Lemaster, 403 F.3d at 220 n.2.

The court's imposition of 120 months incarceration followed by a five-year term of supervised release was not improper. Indeed, the sentence was the mandatory.[4] See 21 U.S.C. § 841(b)(1)(A). Accordingly, Zaldivar-Fuentes' claim that his sentence was unreasonable has no merit.

---

[4] Based on Zaldivar-Fuentes' total offense level of 29 and criminal history category of I, the guideline range for imprisonment may have been lowered, however, where a statutorily required minimum sentence is greater than the minimum of the guideline range, the statutory required minimum sentence shall become the minimum term of the guideline range. Therefore, the guideline range for imprisonment in this case was 120 months. U.S. Sentencing Guidelines Manual § 5G1.1(c)(2) (2005). Further, according to the U.S. Sentencing Guidelines Manual, except as otherwise provided, the term of supervised release imposed shall not be less than any statutorily require term. Id. at § 5D1.2(b). Therefore, the guideline provision for supervised release in this case was five years.

4

## IV.

Zaldivar-Fuentes claims that the government breached the plea agreement when it failed to "recommend" a downward departure to the court. Zaldivar-Fuentes states:

> the government made it very clear that I would be sentenced below the mandatory minimum, in exchange for my cooperation. It was my understanding that I would receive a lesser sentence for waiving my rights... The government, i.e., the prosecutor, said that a downward departure would be recommended if I provided a "proffer statement" disclosing my criminal conduct in the instan[t] offense.

Zaldivar-Fuentes argues that despite his proffer, the government failed to move for a downward departure, thereby breaching the plea agreement. The court finds that this claim fails for several reasons.

First, this claim is waived. Zaldivar-Fuentes could have raised this issue on direct appeal but did not; in addition, he has not shown cause and prejudice capable of excusing default, therefore this claim is waived. Bousley v. United States, 523 U.S. 614 (1998).

Second, even if this claim was not waived, it still has no merit. Zaldivar-Fuentes states that he was "induced by the government to plea[d] guilty," claiming that the government agreed to make a motion for downward departure, leading him to believe that he would be sentenced below the mandatory minimum. However, these contentions contrast sharply with the statements Zaldivar-Fuentes made during his plea colloquy, when he affirmed that he had received a copy of the information, that he had discussed the charges and his case with counsel, that he understood everything in the plea agreement, that no one had made any offers or different promise or assurance to him to induce entry of the plea, that no one had forced him to enter the guilty plea, and that he understood the maximum penalties for the offense charged and the mandatory minimum of ten years. Because Zaldivar-Fuentes' statements made at his plea hearing were made under oath to the court and because he has not shown any extraordinary reason why the court should believe his now contradictory

statements, the court finds that his claim that the government breached the plea agreement has no merit. Lemaster, 403 F.3d at 221. Moreover, in the plea agreement, the government did not agree to make a motion for downward departure under all circumstances. Rather, the government agreed that if Zaldivar-Fuentes fulfilled his obligations under the plea agreement, the United States would recommend a sentence of incarceration between the low end and middle of the applicable sentencing guidelines range. Further, the plea agreement states that the government would object to any motion for downward departure that Zaldivar-Fuentes made. Finally, the plea agreement states that the court may sentence him to a term of less than ten years incarceration only if the United States made a substantial assistance motion pursuant to 18 U.S.C. 3553(e) or if he qualified for the safety valve pursuant to 18 U.S.C. 3553(e). Zaldivar-Fuentes acknowledged in the agreement that no one promised him that a substantial assistance motion would be made on his behalf. Further, the court made a finding on the record that he did not disclose all he knew concerning the identity of a certain individual and therefore did not qualify for the safety-valve. Accordingly, the court finds that his claim that the government breached the plea agreement by not seeking a downward departure has no merit.

## V.

Zaldivar-Fuentes argues that counsel was ineffective in failing to file an appeal based on the government's alleged breach of the plea agreement. In order to establish a claim of ineffective assistance of counsel, Zaldivar-Fuentes must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's alleged deficient performance, the outcome of his hearing or case would have been different. Strickland v. Washington, 466 U.S. 668, 669 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Zaldivar-Fuentes concedes that he did not ask his attorney to file an appeal but argues that his attorney nevertheless had a duty to file such an appeal. In

6

cases where defendants have not instructed counsel to file an appeal, the constitutional inquiry beings with the question of whether counsel in fact consulted with the defendant about the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). In this case, there is no evidence that counsel consulted with Zaldivar-Fuentes after sentencing regarding the advantages and disadvantages of filing an appeal and therefore, the court must further inquire whether counsel had the affirmative duty to consult. Id. at 480. An affirmative duty to consult arises when either (1) any rational defendant would want to appeal (for example, where there is a non-frivolous ground for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. In this case, Zaldivar-Fuentes waived his right to appeal any sentencing guideline issue, there was no apparent non-frivolous ground for appeal, and the court clearly apprised Zaldivar-Fuentes of his right to appeal, thus the facts of this case fall squarely in the examples cited by the court in Flores-Oretega where no further consultation by counsel is required. Id. at 479-480. Consequently, the court finds that in this case, a rational defendant would not want to appeal. Further, the court also finds that Zaldivar-Fuentes' did not reasonably demonstrate to counsel that he was interested in filing an appeal in this case. Therefore counsel did not have an affirmative duty to consult with Zaldivar-Fuentes. Accordingly, Zaldivar-Fuentes has shown neither deficient performance by counsel nor prejudice and thus his claim of ineffective assistance fails. Strickland, 466 U.S. at 669.

## V.

For the reasons stated herein, the court grants respondent's motion to dismiss.

**ENTER**: This 7th day of February, 2007.

United States District Judge